And we'll next hear argument in United States v. Lillard I'll briefly be touching on all three issues we raised, so I'd like to start with our first issue about how under any theory of admissibility that his theft of these eight keys of cocaine should have been inadmissible, either under the inextricable intertwined theory or the 404B theory. First, the inextricably intertwined theory, I think U.S. v. Williams, we've cited that in a brief, makes it very clear how that comes in. And it has to either constitute a part of the transaction that serves as the basis for the criminal charge. So why isn't it an overt act in furtherance of a conspiracy? Your Honor, my understanding is, unlike a bank robbery, which you just heard before, a drug conspiracy does not require an overt act. Sure, it's alleged in the indictment, but in a drug conspiracy, no. So if it's alleged in the indictment, isn't there an opportunity to prove it? That's correct, unless it fails to come in under a 404B or a 403 analysis, which is, in fact, in this case. So our argument is it's not directly relevant to a conspiracy simply because you don't have to prove the overt acts, whether or not they happen to be listed in the indictment. Whether you conceptualize it as part of the transaction or as showing who the conspirator was who was driving the truck, why doesn't the fact that he stole 8 kilograms show that it was he and he knew what the stuff was and had the opportunity to take it, all of which, and it happened simultaneously with the offense? So it's just sort of like a slam dunk. I hear you, Your Honor. It is relevant. I agree. It shows identity. It shows knowledge of the substance. However, when you engage in a 403 balancing test, I think you have to err on the side of excluding it because when you consider the precedence, the only thing more, I mean, as far as the 403 precedence is concerned, you're talking about not having a drug dealer, which is something that most jurors don't like. You have a dishonest drug dealer. So that's the prejudicial aspect of it. And then on the probative side of it, you have certainly testimony from a co-operator that establishes identity and knowledge. You have a voice ID that establishes identity. You have the admission of Mr. Lillard that he only drove the truck once, so he got the identity of the person there. His name is mentioned prominently on these phone conversations between Hooper, Duane Nissen, and Dominguez. His handwriting signatures on the bill of lading took place in McAllen, Texas, and the scrap metal employee made a tentative in-court identification. So as far as identity and knowledge is concerned, I would say there's ample evidence showing identity and knowledge absent this theft of eight kilograms. So then you engage in this 403 balancing test. And sure, it is relevant, but it's not that relevant when you consider the prejudicial aspect of it. Do we put into the scales the fact that there was testimony that he wasn't even there, that he was in his mother's house? Well, I don't think the Court had that at that point in time, because this is an in-limiting motion when he's doing the 403 analysis, and that didn't come up after this was the 403 motion, excuse me, the 404B, and the in-limiting motion was heard and denied. And then that came up afterwards. So no, I guess the Court did not have the benefit of it, and I don't think the Court needs the benefit of what happened after the Court admitted that evidence, because that came in at the tail end of the prosecution. So again, and I think the record speaks about how de minimis the probative value is, because out of a 32-page argument the prosecutor laid out for the jury, and I'm including both arguments, the opening argument and the closing argument, he made one line mentioning this coke theft. And that's, he indicated that coke theft shows he knew he was transporting coke. Just one line out of a 32-page argument. So obviously, it certainly was not a significant probative area of his prosecution. And so my argument is that when you engage in this 403 balancing test, I think when you balance that, I think the prejudicial aspect substantially outweighs the probative value of this evidence, which is de minimis. And especially since you're talking about 60 alleged overt facts in that indictment, 59 of which the prosecutor could have chosen and laid out in very graphic detail without getting into that one overt act where he's stealing 8 kilograms of cocaine from this truckload of 150 kilograms. So I think when you consider all the aspects, the law would favor preclusion of that because it's unduly prejudicial. As far as argument number two is concerned, the failure to give an alibi instruction. One was not requested. Is that correct? That's correct. And if I read the response correctly, the U.S. attorney seems to be excusing that because it was a tactical decision. I think if you analyze the record, it underscores it was not a tactical decision because if the court recalls in the second day of trial, and this is at the excerpts, page 124, second day of trial, that's when counsel down below states for the first time he intends to present an alibi defense. He blew Rule 12.1. The court certainly had every reason to say, well, what happened about that? Are you making an ineffective assistance argument now? Well, I wasn't going to mention that, but I'm just addressing whether it was tactical or not tactical. What difference does it make whether it was tactical or not tactical? I mean, unless you're making an ineffective assistance counsel. I mean, either it should have been given or it shouldn't have been, shouldn't it? I mean, we review for plain error. So isn't the question whether it was obvious to the court, despite all of the evidence showing that he was in Mac, whatever it is, Texas, that an alibi instruction should have been given, despite the fact that it wasn't requested? Well, okay. I guess me being the appellate attorney can stand up there and say it was ineffective given the overall. Well, no. I'm not – I understand you make an ineffective assistance argument, which normally we defer because we have no basis for deciding whether it was tactical or not. So that was the basis of my question. We're asking you, when you start talking about tactics, is that what your argument is directed toward? Okay. Yes. In this particular instance, the failure to request an alibi instruction is ineffective assistance. Okay. Well, that's something, as you know, we normally defer for habeas review because we have no way of knowing. Understood. Okay. But my – yes, ma'am. Go ahead. I think there's enough in the record that the court can make an informed decision as to whether or not this constitutes an effective assistance to counsel. Well, all right. Suppose, then, let's go back and answer – give you a chance to answer the heart of my other question, which is on the merits of the issue of whether there should have been an alibi instruction. Why do you contend that it was obvious to the trial court that an alibi instruction had to be given despite the fact that none was requested and in light of evidence that he was in Texas at the time? Well, I mean, an alibi defense is not inconsistent with what's presented. I'm not sure if I heard the question. I want to make sure I answer that question. Look, we have plain error review. Understood. All right. So my question is, why was it – why should it have been so obvious to this trial judge that an alibi instruction should have been given even though no request was made for it? Okay. Because on the second day of trial, when the court was alerted to the fact, hey, there's an alibi, and the prosecutor rightfully objected, what's going on? Where's the 12.1 notice? And the court says, yes, that's correct. You seem to be presenting an alibi now. Where is that notice? What's your explanation for failing to comply with that notice? Okay. That doesn't get me to the point. That was the second day of trial. Now we're talking about instructions. That's true. So – and then they present Penny Harder, who comes in as an alibi witness. Yes. And the court sat and heard her one afternoon talking about why he was in Chicago as opposed to driving 150 pounds a kilo. And I am the trial judge, and I'm sitting there, and I hear that. And then I also understand that there's all this other evidence that clearly shows that the defendant was in Texas at the time that she says she was trying to talk to him in Chicago. And counsel doesn't ask for one. Why shouldn't I figure as the trial judge, well, sure, they made noises about an alibi defense, but they just let it go by the boards. I'm not going to voluntarily give a defense that they don't want on conflicting testimony or not even really conflicting. All right. When they're going over jury instructions, I think based on the way the trial was going, the court, being a very good and competent court, could figure out, hey, you know, are you raising an alibi? And then getting an informed and tactical waiver as to why an instruction does not warrant it. I don't see where the prejudice lies, because having heard that, the jury obviously disbelieved it. Regardless of whether there was an alibi instruction, there had to be proof beyond a reasonable doubt. It didn't give them a reasonable doubt. I guess I don't see where there could be prejudice, even if the trial court should have thought of it. Okay. It sounds, I mean, given the state of the evidence, I would say it was a strong case. I'm not conceding it was overwhelming. But when you're testing for plain error, you have to go through those four Alano steps. You know, was it error? Yes. Was it plain error? Yes. Did it affect the substantial rights to be accused? Yes, because the jury was denied of hearing the defense theory of the case. The only issue in debate is the fourth Alano factor, where we have to decide whether it affects the fairness, integrity, and public reputation of the judicial proceedings. And I would submit if, oh, and then plus you have Zuniga that says it's reversible per se, no matter how strong the argument. If a request is made for it, something which you, which was left out of the brief. And those are really important ellipses. Okay. It is reversible error if the evidence warrants it and if a request is made for it. Your Honor, I thought I made that, I put that in my brief. Well. And I understand it's reversible per se, but that's why I'm here and I'm saying that simply because the defense counsel did not request it down below, the fourth Alano factor. If it's not a tactical decision, my argument is that that affects the fourth prong of the Alano analysis. It affects the fairness, integrity system. And that's why it's plain error because it does just that. If we conclude it was not a tactical decision, I would submit that I have a less strong case if the court concludes it was a tactical decision on defense counsel's part. But I don't think it is because if you read his argument and he's talking about right here, if the government had rested, we didn't have to put on any evidence. We could have stood up, argued the case and suggested to you there would be reasonable doubt. But we wanted to do was to put on a case so that there would no longer be any doubt in your mind that it was not. And then he goes on and spends two pages talking about the alibi case, the evidence of Patty Harder. So obviously the defense attorney down below was relying on her testimony to establish an alibi. And I agree. There's strong evidence to the contrary. But I don't think that precludes us from arguing plain error simply because counsel down below neglected to request the instruction. And then the last argument, the ineffective assistance of counsel argument, I agree. Normally these are handled in 2255 petitions. But I felt reading the transcript at the sentencing hearing based on the appellant's statements at sentencing about these phone records that were never produced, the alibi witnesses that were never called, the corroborated girlfriend, the T-checks that could have substantiated that he was not the person driving the truck, all this that he stood up and complained about during sentencing, I would base, I would suggest to the court that at that point in time, the court had a sua sponte obligation to take notice of the problem and failure to do so would constitute plain error. I didn't put this in a 28-J letter because I just stumbled on this last night. But there's, and I gave it to the U.S. The United States v. Widener, it's a Ninth Circuit case, 834 at Fed Second, at 1474, specifically at 1482. And I would suggest that the statement by Mr. Lillard at sentencing complaining about all the things that his attorney did not do to present the alibi defense certainly would have put the judge on notice that there was something going on. And then over and above that, and again, I would cite U.S. v.  Widener's 28-J letter, but we suggest in our opening brief that the other option is a limited remand for a hearing on IAC. And this is the purpose of habeas, though. That's true. But I felt that there was enough out there to put somebody on notice and perhaps there is some support, judicial support, for a limited remand to determine an effective assistance counsel or substitution counsel claims. And that's why I bring it to the court's attention. Other than that, I'm ready to submit it unless the court has questions. Okay. Thank you. Stan. I'm Mark Young on behalf of the United States. I just wanted to briefly address three issues that were raised by Appellant in his brief. The first is that the theft of the 8 kilograms of cocaine was inextricably intertwined. Not only was it part of the transportation of the 150 kilograms of cocaine, and by that means, by that I mean the facts of the theft couldn't be separated out of defendant Lilly transporting the 150 kilograms of cocaine. It was also necessary for the government to present that evidence in order to offer a coherent picture of the events that occurred. And the evidence supports this argument in that there were intercepted phone calls in which the missing cocaine was discussed. Originally it was discussed as some of the boxes of cocaine had opened. There were pay-oh sheets that were found on the lead defendants in this case indicating that cocaine had been stolen or that Howard Hooper, the person above lying with defendant Lilly, now owed the organization money because of the theft of this cocaine and that he had to take additional trips to pay off the theft of this cocaine. There was $30,000 in drug proceeds that were found at defendant Hooper's house, which corroborates his story that this money was from the sale of these 8 kilograms of cocaine. And there was a subsequent transportation of 150 kilograms of cocaine by defendant Hooper. So not only was it necessary to show this story to have a coherent story, but it was also corroborating the government's cooperate in this matter because defendant Lilly was never actually arrested with the cocaine. Defendant Lilly was never actually seen by any law enforcement officers. So the government had a circumstantial case against it. And while there was a lot of evidence against the defendant, there was no actual point in time where he was found with the cocaine or found in the truck. So these type of evidence, the intercepted phone calls referencing the theft, all corroborated the government's story that defendant was the one who transported this cocaine. And that's also why under a 404B analysis this should come in. It was not unfairly prejudicial. There was a large probative value from this evidence, and that is defendant's knowledge that he was transporting cocaine. And the knowledge issue is important because without that evidence, defendant could have argued that he thought he was just instantly transporting sprat metal or picking up gold or whatever it was he was doing legitimately as a cover story, as the evidence showed, as a cover story for his transportation of this cocaine. But with this evidence, the government was able to prove that at a certain point, a day after he picked up the 150 kilograms of cocaine, he knew no later than that date that he was in fact transporting cocaine, yet he continued to drive it all the way to New Jersey, and therefore he would be guilty of participating in this conspiracy. So that's the importance of that evidence. Under either the fact that it's inextricably intertwined or under a 404B analysis, the government believes it should be admitted. Now, with respect to an alibi defense in this case, government doesn't believe that there was any plain error in this matter. And the reason for that is because the second day of trial, defense counsel doesn't just simply say to the court, I have information of an alibi witness that I didn't turn over. What he tells the court is, I investigated this alibi witness, and for reasons I can't share with the court, I don't want to put a – I had made a decision not to put on this witness. I believe the court could and should read between the lines. What defense counsel is saying is, this witness came to me, she told me her story, I didn't believe her, and I wasn't about to put someone on who's going to perjure herself, so I didn't want to do it. Why he changed his mind, whether it was pressure from the defendant or for whatever reason, he ended up putting on Ms. Harder. But it's clear from that second day of trial when he informs the district court that he had previously investigated Ms. Harder's testimony and made a tactical decision not to call her, even though he did, in fact, call her later. So, therefore, when you take the district court's knowledge of defense counsel's initial impression of that evidence, and when you combine it with the government's overwhelming evidence that defendant was not only in Texas, but he had been in Florida a few days before in December, where his handwriting had matched a receipt. He had then gone and picked up scrap metal with a tentative identification of him. He was then in Dallas, Texas, again, where handwriting matched that Ms. Harder's – Ms. Harder had perjured herself. And the defense counsel made the right decision in not emphasizing her perjury by requesting an alibi defense. And that's why the government believes that there is not any error in this case by district court not sua sponte, asking for or instructing the jury in an alibi defense. I mean, you can't argue with that. It is rather odd that he argued the alibi defense in his closing argument. That does seem to contradict his position. But the district court didn't have the benefit of knowing what he was going to argue at the time jury instruction prepared. I believe the jury was pre-instructed. But in any event, the district court did have defense counsel's initial statements regarding his initial decision not to call the witness and the overwhelming evidence that contradicted the alibi witness. And so it would be reasonable for district court to decide that defense counsel had abandoned that defense at the time closing arguments had started. But even if there was plein air in this case, the government doesn't believe that it affected the fairness or the integrity or public reputation of the judicial proceeding for the same reasons I just mentioned, that is the overwhelming evidence of defendant's presence and the fact that the alibi defense was not valid. The final point, and that was the ineffective assistance, generally not handled by appellate's court. And this case is a good reason why. Obviously, there's a lot of information that could be gleaned from a 2255 proceeding. Defense counsel had made preliminary statements as to why his investigation resulted in him not wanting to call Ms. Harder. Under a 2255 investigation, excuse me, proceeding, the government could get declarations from defense counsel or his investigator and form the basis for his reasons not to call her initially and why he didn't pursue such a defense. If the court doesn't have any other questions, the government would submit. Okay. Thank you, Mr. Young. Mr. Hurley. As far as the death of Cocaine is concerned, argument number one, I would say if anything, that worked against a conspiracy. In other words, that was not an act done in furtherance of conspiracy. If anything, it detracted from the conspiracy. Another theory that Mr. Young was bringing up as far as the Miss Billy is concerned, it corroborates what Mr. Hooper, Mr. Hopper, the cooperator, said. Well, interestingly enough, is that the only person who comes up with the theft of 8 kilograms of Cocaine is the cooperator, Mr. Hooper himself. I would submit the prosecutor would have a stronger argument if a third independent person came up with this theft of Cocaine in order to corroborate Mr. Hooper, that he'd have a stronger argument for Miss Billy. As far as the alibi is concerned, I think it's clear that counsel below did make a statement that he previously investigated, and at that point in time made a tactical decision not to call Miss Harder. But the records clearly must have made some sort of subsequent tactical decision in order to call her, check out her background, check out her story, in order to make a determination in his own mind that she was credible enough to put on a stand. And once he makes that tactical decision, I think he has an affirmative obligation, once he puts her on as an alibi witness, to at least request the alibi instruction. As far as the overwhelming evidence is concerned, my argument is, obviously the Court is focused in on it, but that's not one of the four factors, the four enumerated factors in Elano, which distinguishes plain error from other types of error. The fact that the evidence might be strong, really strong or overwhelming. It's those four factors I've previously identified, and none of them include the overwhelming nature of the evidence when you're evaluating whether or not this constituted plain error or not. Other than that, I submit it unless the Court has questions. Thank you, Counsel. The matter just argued will be submitted. The Court will stand in recess for the day. All rise. Thank you.
judges: B. Fletcher, Rymer, Graber